**HOSPITAL TELEVISION, INCORPORATED, a Corporation, Plaintiff-Appellant,**

v.

**WELLS TELEVISION, INCORPORATED, a Corporation, and Tishman Realty and Construction Company, Incorporated, a Corporation, Defendants-Appellees.**

**No. 71–1475.**

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1972.

Decided June 22, 1972.

**418**

Stuart Symington, Jr., St. Louis, Mo., for appellant.

Robert S. Allen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellee, Tishman Realty & Construction Co., Inc.

Walter M. Clark, Fred Leicht, Jr., Thomas E. Wack, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for appellee, Wells Television, Inc.

Before Mr. Justice CLARK,* and VOGEL and LAY, Circuit Judges.

Mr. Justice CLARK:

In this treble damage action filed by Hospital Television, Inc. under the federal antitrust laws, the jury found against H.T.I., and it raises four points of error on this appeal. The case was tried to the jury on the rule of reason doctrine announced by Chief Justice White in Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). On the issue of the liability under Sections 1 and 2 of the Sherman Act[1] of the appellees, Wells Television, Inc. and Tishman, appellant says that the refusal of the trial court to admit in evidence a diary of longhand notes made by Cidney Dade, an employee of appellant, outlining his efforts to secure hospital TV accounts, was erroneous. On damages, it claims that the court erred (1) in limiting the period of recovery to the four-year period immediately prior to the filing of the suit; (2) in restricting the instructions on causation to *the* proximate cause of the injury rather than *a* proximate cause thereof; and (3) in excluding from evidence a damage study made by an expert witness. A study of the entire record has been necessary because of the lack of a mo-

---

* Associate Justice Tom C. Clark, United States Supreme Court, retired, is sitting by designation.

1. 15 U.S.C. §§ 1 and 2:
  "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign na-
tions, is declared to be illegal . . .
  "§ 2: Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor . . . ."

tion for a new trial as well as an appendix on the issues raised. In addition the briefs stress the facts in the case, the appellant devoting 60 percent of its main brief and practically all of its reply brief thereto and appellee devoting half of its brief to the same. The jury found the issue of liability against the appellant and no attack is made on this finding. As to the refusal of the court to admit the diary of Mr. Dade in evidence, we find no error. A study of the District Judge's charge to the jury reveals it to be quite adequate on the issue of liability. The jury having found no liability, we do not reach the damage issues raised and affirm the judgment.

1. The facts indicate that appellant was organized in 1959 and is engaged in the business of supplying hospitals in St. Louis and vicinity with TV sets for the use of their patients on a rental basis. Prior to organizing appellant, Mrs. Dorothy Dennis worked as a saleslady for Hospital Television Services, Inc. in St. Louis, which was engaged in the same business as H.T.I., and by March 1, 1960 she had switched four local hospital accounts from her former employer to appellant and was supplying a fifth hospital. She was an incorporator and one of three stockholders of appellant and is now its sole stockholder.

In December, 1959, Jay and Arnold Wells, who had a national chain organization engaged in leasing TV equipment to hotels and motels in 25 states, approached Tishman Realty and Investment Co. of St. Louis, to purchase the Wells business. Tishman formed a wholly owned subsidiary and bought Wells' holdings for $1,200,000 and one fifth of the stock of the subsidiary. The subsidiary later adopted the name of Wells Television, Inc. Within 9 months Wells had acquired some 250 hospital accounts over the country. On March 15, 1960, Wells acquired the eleven hospital accounts of Ball Radio in St. Louis and soon thereafter also secured the eight hospital accounts of Hospital Television Services, Inc., the former employer of Mrs. Dennis. Tishman furnished or procured the capital necessary for Wells to expand its national operations in hospital TV accounts, of which the latter had some five hundred by mid 1971. Wells standard contracts with the hospitals carried three clauses, *inter alia*, (1) a "right to match" provision giving Wells the option to meet any competitor's proposal made to one of its hospital accounts on the expiration of a Wells' contract; (2) a "not permitted" provision prohibiting any patient from bringing a TV set into the patient's hospital room; and (3) an "ever green" clause requiring a 180-day prior notice requirement to terminate an expiring contract the failure to give which resulted in its automatic renewal. At the time of the filing of this suit in 1969, Wells had 17 hospital contracts in St. Louis, while appellant had four and six were self-operated or held by other rental concerns. There were 27 hospitals in the St. Louis area that were potential users of TV for their patients on a rental basis.

2. After a thirteen-day trial, the following issues were submitted to the jury under a charge to which no objection [other than above stated] was taken.[2] First, the jury was to determine the line of commerce to be either as appellant "contends, the rental of television sets to hospitals and hospital patients," or as appellees "contend, the rental of television sets to hospitals and their patients, as well as to hotels, motels, nursing homes and other customers using rental television." After which, the jury "must then determine whether the relevant geographic market" is, as appellant contends, "the metropolitan St. Louis Area" or as appellees contend, "nationwide; or whether the relevant geographic market is some other area."

2. The instructions were in standard form, initially explaining the duties of jurors; the nature of the suit; the purpose, meaning and application of the Sherman Act, both Sections 1 and 2; the elements of proof necessary to show a violation of the antitrust laws; causation; damages, etc.

Third, whether or not the appellees have violated the antitrust laws by combining to restrict or unreasonably restrain trade in interstate commerce or by monopolizing, attempting to monopolize, combining or conspiring to monopolize the line of commerce in the relevant geographical market area.[3] And finally, the jury was directed that if it found that appellees, or either of them, had violated the antitrust laws in the line of commerce in the relevant geographical market area it found applicable then it should direct its attention to whether or not such violations are or have been the proximate cause of any injury. The court then instructed on damages and gave the jury three alternate forms of verdict. The third form was: "We, the jury in the above-entitled cause, find the issues herein joined in favor of both defendants and against the plaintiff." The jury adopted it.

3. In view of this finding we can only conclude that the jury was of the view that the appellees had not violated the antitrust laws.[4] We, therefore, need only consider the single question raised by appellant as to whether the court erred in refusing to admit into evidence the longhand notes of Cidney Dade as to his solicitation of customers for appellant. While Mrs. Dennis was on the stand, she identified a file that included a number of handwritten notes which were made by Dade and some of which were offered in evidence. They were offered under the Federal Business Records Law, 28 U.S.C. § 1732(a).[5] The file included pages from a notebook that Dade wrote in diary form and had to do with calls that he made on prospects. Rather than calling Dade, who was in the courtroom, appellant sought to have the diary pages admitted into the record as official records of appellant. The court rejected the offer on several grounds: hearsay, United States v. Burruss, 418 F.2d 677 (4 Cir. 1969); not a business record as contemplated by the Act, Skogen v. Dow Chemical Company, 375 F.2d 692, 705 (8 Cir. 1967); Bowman v. Kaufman, 387 F.2d 582 (2 Cir. 1967); High Voltage Engineering Corp. v. Pierce, 359 F.2d 33 (10 Cir. 1966); the substance of the calls reflected in the diary were already in evidence through Mrs. Dennis and there could,

---

3. In this connection the charge to the jury spelled out in detail the respective claims of the appellant, Wells and Tishman. Included were the claims of monopoly, attempt to monopolize and unreasonable restraint on Hospital Television; the issues as to creation of Wells Television, Inc.; its acquisition of Ball Radio and Hospital Television Services in St. Louis; the clauses in the Wells hospital contracts i. e. "right to match", private sets "not permitted" etc.; all of which Hospital Television claimed was restrictive and Wells claimed was to protect its investment; "the right of first refusal" clause which Wells claimed was never invoked and Hospital Television claimed gave the contracts a perpetual existence; Wells' claim that its growth was through superior managment etc. and that Hospital Television's failure was lack of business efforts, undercapitalization, refusal to furnish equipment necessary, lack of salesmanship, attempts to pressure customers etc. In short, the 30-page charge fairly submitted all of the issues to the jury. As we have said, there was no objection to the charge on these grounds but solely on the damage, if any.

4. Exhibits 28 and 82 were the only pages actually offered. Ex. 28 relates a conversation between Dade and Alsop of Alexian Brothers Hospital. We note it quotes Alsop as expressing "extreme satisfaction with Wells," which is indicative of the hearsay character of all of the offerings. Ex. 82 related the incidence of a call Dade made to DePaul Hospital in July, 1965, which was beyond the limitation period of 4 years prior to suit. The efforts of appellant to secure both of these hospital accounts, inter alia, were related in Mrs. Dennis' testimony and the diary would have been cumulative at most.

5. The diary was required by the appellant and apparently was made in the regular course of business but was filled with hearsay and, in our view, was not within the contemplation of the Business Records Act. The presence of Dade in the courtroom at the time would, in any event, require his identification and explication of the proffered evidence in the light of its obvious dangers as well as its impingement upon the hearsay rule.

therefore, be no prejudice; and the presence of Mr. Dade in the courtroom. An earlier deposition of Mr. Dade, not introduced at trial, indicated that he and Mrs. Dennis were on mawkish terms. In his deposition he stated that appellant's losses were caused by her failure to work on the hospital accounts assiduously and refusal to use improved installation equipment in the hospital room that would interfere less with the routine operation of the hospital as well as eliminate the risk of injury to patients, personnel and visitors. It appears that the effort to introduce the diary was to avoid placing Dade on the stand and risking this adverse testimony. We conclude that the court properly excluded the diary on the grounds noted.

The remaining points raised by appellant have to do with damages. On a general verdict one never knows what the jury hung its verdict upon. But since it only considered the case for twenty minutes after its submission and since the court's instructions required a decision on liability first, it is fair to assume that it never reached the damage issue. We, therefore, do not consider those issues and the judgment is affirmed.